IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BUAS SANDS HOTEL, LLC
   *Plaintiff*,

v.

LIBERTY MUTUAL INSURANCE
COMPANY,
   *Defendant*.

Civil Action No. ELH-21-1214

**MEMORANDUM**

This case arises from the construction of the Fenwick Sands Tapestry Hotel in Fenwick,

Delaware (the "Hotel").  In April 2019, plaintiff Buas Sands Hotel, LLC ("Sands"), the owner and

developer of the Hotel, entered into a construction contract (the "Contract") with Harkins

Contracting, Inc. ("Harkins"), a general contractor, to construct the Hotel.  Under the contract,

Harkins was required to obtain both a Performance Bond and a Payment Bond (the "Bonds") to

assure its performance.  Defendant Liberty Mutual Insurance Company ("Liberty"), as surety,

issued the Bonds.

Sands has filed suit against Liberty, claiming that Harkins breached its contract with

plaintiff, and therefore plaintiff is entitled to recover in accordance with the Bonds.  ECF 1 (the

"Complaint").[1]  But, according to Sands, Liberty has refused to comply.  *Id.*  Copies of the Bonds

---

[1] Plaintiff invokes this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). ECF 1, ¶ 3.  Plaintiff is a limited liability company comprised of two members, the "Spiro Buas Irrevocable Family Trust" and the "Spiro and Maryanne Buas Joint Rvocable [sic] Trust," both of which, plaintiff claims, are citizens of Maryland. ECF 11 at 2; *see* ECF 1, ¶ 1.  Defendant is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.  ECF 1, ¶ 2; ECF 7 at 1.  And, the Complaint seeks to recover nearly $1 million from defendant. ECF 1 at 4-6.  Accordingly, I am satisfied that subject matter jurisdiction exists in this case.

are appended to the Complaint as exhibits.  *See* ECF 1-1 (the "Performance Bond"); ECF 1-2 (the "Payment Bond").  Plaintiff seeks damages in the amount of $950,000, "together with interest, costs and attorneys' fees."  ECF 1 at 5-6.

Defendant has moved to stay these proceedings pending the outcome of arbitration between Harkins and Sands.  ECF 8.  The motion is accompanied by a memorandum (ECF 8-1) (collectively, the "Motion") and supported by five exhibits: a copy of the Contract (ECF 8-2); a copy of the "General Conditions of the Contract" (ECF 8-3); Harkin's demand for arbitration, filed with the American Arbitration Association ("AAA") (ECF 8-4, the "Demand"); Sands's counterclaim in that proceeding (ECF 8-5); and a copy of an AAA Notice of Hearing (ECF 8-6).

Plaintiff opposes the Motion.  ECF 10 (the "Opposition").  Defendant has not replied, and the time to do so has expired.  *See* Local Rule 105.2(a).

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons discussed below, I shall grant the Motion.

## I.      Factual Background

On or about April 18, 2019, Sands entered into the Contract with Harkins for construction of the Hotel, in exchange for payment in the amount of $8,575,000.00.  ECF 1, ⁋ 4; *see* ECF 8-2. The Contract specifies that Harkins was required to have "substantially completed" its work, as defined by the Contract, within one year of its start date, plus "any additional days added due to change orders and/or weather delays," *i.e.*, by April 28, 2020.  ECF 1¸ ⁋⁋ 5-6; *see* ECF 8-2 at 3, §§ 3.3.1, 3.3.2.1.

Further, the Contract requires Harkins to pay "liquidated damages in the amount of $2,500.00 per day for each day" beyond this deadline where "substantial completion had not been achieved."  ECF 1, ⁋ 6; *see* ECF 8-2 at 3, ⁋ 3.3.2.1.

2

Article 6 of the Contract requires that "all disputes between [Harkins and Sands] would be decided by the project Architect, subject to the later right of either party to demand arbitration of contested issues." ECF 1, ⁋ 6; *see* ECF 8-2 at 7-8, §§ 6.1-6.2; ECF 8-3 at 40, §§ 15.4.1-15.4.4. Moreover, the Contract provides: "The award rendered by the arbitrator . . . shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." ECF 8-3 at 40, § 15.4.2.

Under the Contract, Harkins was required to post bonds guaranteeing its performance and payment to subcontractors. ECF 1, ⁋ 4; ECF 8-1 at 2; *see also* ECF 8-3 at 32, § 11.1.2. According to Liberty, Harkins "obtained payment and performance bonds from Liberty for the Project." ECF 8-1 at 2. About one month after the Contract's execution, Liberty issued the Bonds, "each in the prime contract amount . . . ." ECF 1, ⁋ 4; *see* ECF 1-1; ECF 1-2.

The Performance Bond specifies, in relevant part, that in the event Harkins fails to perform according to the Contract terms, Sands has the right to declare a "Contractor Default," provided that it first gives notice to Harkins and Liberty of its intent to do so. ECF 1-1, § 3.1; *see also* ECF 1, ⁋ 10. Upon receiving such notice, Liberty is thereafter obligated either to "[a]rrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract," "[u]ndertake to perform and complete the Construction Contract itself, through its agents or independent contractors," or "[o]btain bids or negotiated proposals from qualified contractors . . . for performance and completion of the Construction Contract . . . and pay to the Owner the amount of damages . . . in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default." ECF 1-1, §§ 5.1-5.3.

Under the Payment Bond, Liberty is required to indemnify Sands from all claims by subcontractors. ECF 1, ⁋⁋ 21, 22. The Payment Bond provides that, if Sands notifies Liberty and

Harkins of any "claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials, or equipment" arising under the Contract, Liberty is required to "indemnify and hold harmless the Owner against a duly tendered claim, demand, lien, or suit."  ECF 1-2, §§ 3-4.

According to plaintiff, Harkins failed to complete its work by the deadline of April 28, 2020.  *See* ECF 1, ¶¶ 7-8; ECF 8-1 at 3.  In July 2020, Sands "approved and certified the amount of $202,500.00 as liquidated damages assessed against Harkins for delay," up to that date.  ECF 1, ¶ 7.

Moreover, according to Sands, Harkins "stopped paying subcontractors in full and issued partial payments to some," which "resulted in most of those tradesmen refusing to complete their work."  *Id.* ¶¶ 7, 9.  In addition, plaintiff alleges that Harkins and its subcontractors withheld "access codes and passwords to critical systems, such as the HVAC."  *Id.* ¶ 9.

Further, Sands claims that Substantial Completion occurred on September 22, 2020.  *Id.* ¶ 8.  However, plaintiff contends that, after the issuance of a Certificate of Occupancy, Harkins "essentially abandoned the project."  *Id.*

Sands notified Liberty and Harkins of its intent to declare a Contractor Default and, subsequently, terminated the Contract.  *Id.* ¶ 10.  In plaintiff's view, the timely provision of this notice triggered Liberty's obligation to perform under the terms of the Bonds.  *Id.* ¶¶ 17, 23.

In the Motion, defendant indicates that, according to Harkins, Sands breached the Contract by improperly withholding payments owed to Harkins.  ECF 8-1 at 3.  To that end, in January 2021 Harkins filed a "Demand for Arbitration with the American Arbitration Association seeking

payment" of the contested funds.  ECF 8-1 at 4; *see* ECF 8-4. [2]  In the Demand, Harkins asserts that Sands's claim for liquidated damages was contrary to "an oral agreement between the parties that liquidated damages would not be charged due to delays caused by the owner."  ECF 8-4, ⁋ 7. According to Liberty, on February 11, 2021, Sands filed a counterclaim against Harkins in the arbitration proceeding for damages in the same amount as it seeks to recover from Liberty in this action.  ECF 8-1 at 4; *see also* ECF 8-5 at 1.  Sands alleges, *inter alia*, that Harkins failed to pay subcontractors and suppliers, breached the Contract, and caused delays.  ECF 8-5.  Defendant notes that an evidentiary hearing before the AAA is currently scheduled to occur from September 27, 2021 through October 1, 2021.  ECF 8-1 at 4; *see* ECF 8-6.

Given the posture of the dispute between Harkins and Sands, Liberty asks this Court to grant "a stay of this case pending the outcome" of the arbitration proceedings.  ECF 8-1 at 1. Because "Liberty's potential liability is contingent upon a determination that Harkins has breached the underlying Contract," and that issue is "subject to arbitration pursuant to the Contract," Liberty claims that Maryland law requires this Court to stay the case until arbitration is complete.  ECF 8-1 at 6-8.  In the alternative, defendant asserts that "this Court has the authority to grant a stay" in order to "promote[ ] judicial economy, avoid[ ] inconsistent results, and conserve[ ] the time and resources of the parties and witnesses."  *Id.* at 10.  And, Liberty argues that granting a stay would be appropriate here to give effect to Maryland's "strong public policy" favoring the "resolution of disputes by arbitration."  *Id.* at 11.

---

[2] Harkins initially filed a "mechanic's lien in the Superior Court of the State of Delaware" for this outstanding payment.  ECF 8-1 at 3.  Liberty asserts that Sands responded to this action and filed a counterclaim on November 12, 2020.  *Id.*  But, on November 30, 2020, eleven days after Sands terminated its Contract with Harkins, the parties filed "a stipulation and proposed order to stay Harkins's action for a mechanic's lien pending arbitration."  *Id.*

Plaintiff opposes the Motion for three reasons.  First, Sands notes that it has not agreed with Liberty to arbitrate any claims arising out of the Performance Bond and Payment Bond. ECF 10 at 3.  Second, in plaintiff's view, "[a]s Liberty is not a party to the Arbitration, it is not bound by the award of the arbitrators" and, as a result, Sands "could be required to relitigate the performance issues previously determined . . . ."  ECF 10 at 4.  Finally, Sands argues that this case implicates issues that will not be resolved in arbitration and, consequently, will "ultimately require adjudication by this Court."  ECF 10 at 5.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons discussed below, I shall grant the Motion.

## II.    Choice of Law

"[I]nterpretation of private contracts is ordinarily a question of state law." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).  Because federal courts exercising diversity jurisdiction "apply the choice of law rules of the forum state," I must consult the choice of law rules of Maryland, the state in which this Court is situated, to determine which state's substantive law applies to questions concerning contract formation in this case.  *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state.").

Under Maryland law, "'[a] surety bond is a contract and is to be construed as such.'" *Atlantic Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300, 844 A.2d 460, 468 (2004) (quoting *John McShain, Inc. v. Eagle Indem. Co.*, 180 Md. 202, 205, 23 A.2d 669, 670 (1942)). And, in Maryland, when adjudicating contract claims, courts apply the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

In this case, neither the Performance Bond nor the Payment Bond appears to contain choice-of-law provisions. *See* ECF 1-1; ECF 1-2. However, Liberty argues that Maryland law should govern the Motion because the last act "to render the Bonds binding" occurred when "the Bonds were delivered by Harkins to [Sands] in Maryland where they were accepted." ECF 8-1 at 5. Sands does not dispute this account and, moreover, appears to agree with Liberty, noting: "Maryland law, including Maryland's Uniform Arbitration Act . . . applies in the absence of Federal preemption." ECF 10 at 2. Accordingly, I will apply Maryland law in resolving the Motion.

### III.    Discussion

### A.

Under Maryland law, a court is required to stay ongoing litigation pending the outcome of arbitration in some circumstances, as outlined in the Maryland Uniform Arbitration Act, Md. Code (2020 Repl. Vol.), §§ 3-201 *et seq*. of the Courts and Judicial Proceedings Article ("C.J."). Specifically, C.J. § 3-209 provides, in relevant part:

> (a) A court shall stay any action or proceeding involving an issue subject to arbitration if:
>
> > 1.  A petition for order to arbitrate has been filed; or
> >
> > 2.  An order for arbitration has been made.
>
> (b) If the issue subject to arbitration is severable, the court may order the stay with respect to this issue only.

In addition, a district court has broad discretion to stay proceedings as part of its inherent power to control its own docket. *Landis v. North American*, 299 U.S. 248, 254 (1936); *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 (D. Md. 1984). But, that discretion is not without limits. *In re Sacramento Mun. Utility Dist.*, 395 F. App'x. 684, 687 (Fed. Cir. 2010). A court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *see also United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

"When considering a discretionary motion to stay, courts typically examine three factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which

could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018); *see CX Reinsurance Co. Limited v. Johnson*, GJH-18-2355, 2020 WL 406936, at *3 (D. Md. Jan. 24, 2020).   Additionally, courts consider the length of the requested stay and whether proceedings in another matter involve similar issues. *See Stone v. Trump*, 402 F. Supp. 3d 153, 160 (D. Md. 2019); *Popoola v. MD-Individual Practice Ass'n*, DKC-2000-2496, 2001 WL 579774, at *2 (D. Md. May 23, 2001).

Notably, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus, Inc.,* 715 F.2d 124, 127 (4th Cir. 1983).   In order to issue a stay, a court must be satisfied that a "pressing need" exists, and that "the need for a stay outweighs any possible harm to the nonmovant." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015).

Plaintiff's suit includes two exhibits that are integral to the Complaint.  With the Motion, Liberty has provided additional exhibits. When presented with a motion to stay, a court may consider such exhibits. *See, e.g.*, *United States ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D. Md. 2004) (considering a copy of a subcontract attached to the defendant's motion to stay); *United States ex rel. Kingston Env't Servs., Inv. v. Boland*, No. 16-00205 DKW-RLP, 2017 WL 3763519, at *5-*7 (D. Haw. Aug. 30, 2017) (similar); *Portland General Elec. Co. v. Liberty Mutual Ins. Co.*, 3:16-CV-00495-HZ, 2016 WL 4059658, at *5 (D. Or. Jul. 27, 2016) (similar), *vacated and remanded on other grounds*, 862 F.3d 981 (9th Cir. 2017); *Central Rock Corp. v. Horton Const. Co.*, 2:13-CV-00406-PM-KK, 2013 WL 12184300, at *3 (W.D. La. Jul. 31, 2013) (similar).

Plaintiff does not object to defendant's submission of exhibits. Moreover, plaintiff references two of them in the Opposition. *See* ECF 10 at 1-2 (invoking the Contract and the Demand). Accordingly, in resolving the Motion, I may consider the exhibits plaintiff appended to the Complaint (ECF 1-1; ECF 1-2), as well as the exhibits attached to the Motion (ECF 8-2; ECF 8-3; ECF 8-4; ECF 8-5; ECF 8-6).

**B.**

Liberty argues that this Court is required to stay these proceedings pursuant to Maryland law. *See* ECF 8-1 at 6-8. In the alternative, Liberty asserts that the Court should grant a stay in the exercise of its discretion, in order to promote judicial economy and effectuate Maryland's policy preference that disputes be resolved in private arbitration. *See id.* at 8-13.

Defendant does not assert that its dispute with Sands is directly subject to an arbitration provision. However, the Contract between Sands and Harkins requires them to arbitrate their disputes. ECF 8-2, § 6.2; ECF 8-3, § 15.4. According to Liberty, its "potential liability under the Bonds to [Sands] is limited to circumstances where Harkins has failed to satisfy its obligations under the Contract." ECF 8-1 at 7.

In other words, Liberty argues that Harkins's breach of contract is a condition precedent to Liberty's performance under the Bonds. *Id.* And, "[t]he disputes, claims and allegations regarding Harkins' and [Sands's] alleged breaches and defaults . . . are all issues that are subject to arbitration pursuant to the Contract between those parties . . . ." *Id.* at 8. Therefore, "the substantial issues that are required to be resolved in order for [plaintiff] to prevail in its claim against Liberty . . . are all issues that are subject to arbitration" and are "not severable from this litigation." ECF 8-1 at 8. Defendant concludes that "until the Arbitration is resolved, the claim against the Bonds must be stayed . . . ." *Id.* (citing C.J. § 3-209).

10

Sands recognizes that "there is substantive agreement" between the parties as to "many of the issues raised" by Liberty.  ECF 10 at 2.  It agrees that, in the exercise of its discretion, this Court has the authority to order a stay pending arbitration.  *Id.*  It also agrees that Maryland law applies, in the absence of federal preemption.  *Id.*  And, it agrees that under both Maryland and federal law, arbitration is favored "when there is clear agreement" to arbitrate.  *Id.*  Nevertheless, it urges the Court to deny the Motion.  *Id.*

In its Opposition, plaintiff argues that the Court should decline to grant the Motion because Liberty is not a party to the arbitration agreement between Sands and Harkins and, therefore, it is "not bound by the award of the arbitrators."  *Id.* at 3-4.  Furthermore, plaintiff contends that, in the event that Sands prevails in arbitration, "the doctrine of non-mutual collateral estoppel would not apply to preclude Liberty raising issues in this action . . . ."  *Id.* at 4.  Further, Sands claims that arbitration will not necessarily resolve all of the issues raised by this litigation.  *Id.* at 4-5.  For instance, Sands points out that, if the arbitrator found for Sands, Liberty could escape liability by arguing that Sands's notice of Contractor Default was deficient, which is an issue that will not be resolved in the pending arbitration.  *Id.* at 5.

In my view, Liberty has the better of the argument.

"A condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'"  *All State Home Mortg., Inc. v. Daniel,* 187 Md. App. 166, 182, 977 A.2d 438, 447 (2009) (quoting *Chirichella v. Erwin,* 270 Md. 178, 310 A.2d 555, 557 (1973)), *cert. denied,* 410 Md. 560, 979 A.2d 707 (2009).  Furthermore, Maryland law requires that where "'a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or

excused.'" *Medicine Shoppe Int'l, Inc. v. Siddiqui*, 549 F. App'x 131, 135 (4th Cir. 2013) (quoting *All State Home Mortg., Inc.*, 187 Md. App. at 182, 977 A.2d at 447).

The Bonds plainly impose a condition precedent to Liberty's performance: Harkins's breach of contract.  *See* ECF 1-1 § 2 ("If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond . . . ."); ECF 1-2 § 2 ("If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner . . . then the Surety and the Contractor shall have no obligation under this Bond.").  Consequently, the issue of Liberty's liability is contingent upon, and cannot be severed from, Harkins's alleged liability to Sands.

For this reason, plaintiff's argument that this litigation may conceivably implicate an issue other than Harkins's liability under the Contract misses the mark.  The question this Motion asks is not whether arbitration will resolve every question that Sands's claim may present but simply whether the litigation raises an issue that is subject to arbitration.  *See* ECF 8-1 at 8.  If so, the proceeding may only continue to the extent that doing so will resolve claims severable from those in arbitration.  *See The Redemptorists v. Coulthard Services, Inc.*, 145 Md. App. 153-54, 801 A.2d 1104, 1126 (2002); *Brendsel v. Winchester Const. Co., Inc.*, 392 Md. 601, 610 (2006); *Mangani-Kashkett v. Bouquet*, PWG-13-1215, 2013 Wl 3146939, at *6 (D. Md. June 18, 2013).

As explained above, the current proceedings cannot be severed from the issue of Harkins's liability under the Contract, an issue subject to ongoing arbitration proceedings.  Accordingly, the claims raised in this litigation "must be stayed pending resolution of the arbitrable issue upon which they depend." *The Redemptorists*, 145 Md. App. at 154, 801 A.2d at 1126 (2002) (citation omitted).

To the extent that this Motion should be evaluated pursuant to the Court's discretionary authority, I reach the same conclusion. As a preliminary matter, an evidentiary hearing before the arbitrator is scheduled to begin on September 27, 2021 and end on October 1, 2021. *See* ECF 8-6. In the absence of any evidence to the contrary, it seems fair to assume that the arbitrator will issue a decision soon thereafter. Thus, any stay will be relatively short and there would be no prejudice to plaintiff.

Moreover, a contrary resolution of this Motion would risk subjecting Harkins to inconsistent obligations and frustrate Maryland's preference for disputes to be resolved in private arbitration. *See Bel Pre. Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md. App. 307, 319-20, 320 A.2d 558 (1974) ("Not only suits to enforce an arbitrator's award, but also suits to compel arbitration and suits to stay court action pending arbitration, are now to be viewed as 'favored' actions."), *vacated on other grounds*, 274 Md. 307, 314, 334 A.2d 526, 530 (1975); *see also Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 641, 824 A.2d 87, 93 (2003) ("[T]he Maryland Uniform Arbitration Act . . . expresses the legislative policy favoring enforcement of agreements to arbitrate.") (citations omitted). As Liberty asserts, and Sands does not dispute, Harkins promised that it would "indemnify and hold Liberty harmless from any and all claims relating to bonds issued by Liberty for Harkins." ECF 8-1 at 12. For this reason, if the Court concluded that Liberty was required to perform pursuant to the Bonds, Harkins would functionally be made liable to Sands, irrespective of the arbitrator's decision. In short, as Liberty argues, "Harkins' right to arbitration would effectively be denied." *Id.*

Courts in like position have reached similar conclusions. *See Institute of Mission Helpers of Baltimore Cty. v. Reliance Ins. Co.*, 812 F. Supp. 72, 76 (D. Md. 1992); *Elite Const. Team, Inc..*, JKB-14-2358, 2015 WL 925927, at *3. In *Institute of Mission Helpers of Baltimore Cty.*, for

example, an owner of a construction project sued its contractor's surety, arguing that the surety was liable on its bonds for the contractor's purported failure to perform.  812 F. Supp. at 74.  But, like here, a simultaneous dispute between the contractor and the owner regarding this alleged breach was pending in arbitration.  *Id*. at 76.  Accordingly, the court granted the surety's motion to stay the proceedings pending the outcome of arbitration, concluding that a stay would serve to effectuate federal policy favoring arbitration as well as "conserve judicial resources, and avoid anomalous results . . . ."  *Id.*

## IV.    Conclusion

In sum, I am convinced that a stay pending arbitration is necessary in this case pursuant to Maryland law.  Alternatively, in the exercise of my discretion, a stay is appropriate.  A stay will promote judicial economy, avoid potentially inconsistent results, and will not prejudice the plaintiff.

Therefore, I will grant the Motion.  An Order follows, consistent with this Memorandum.

Date: September 22, 2021                                                     /s/
                                                                          Ellen L. Hollander
                                                                          United States District Judge